UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C23-5348-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff contends the administrative law judge ("ALJ") erred by rejecting medical opinions, testimonial evidence, and misevaluating her residual functional capacity ("RFC"). (Dkt. # 16 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND

Plaintiff was born in 1965, has a high school education, and has worked as an accountant. AR at 100, 315. Plaintiff was last gainfully employed in 2011. *Id.* at 400.

ORDER - 1

Plaintiff applied for SSI and DIB in December 2011 and September 2012, alleging disability as of January 7, 2011. *Id*. at 5. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. After ALJ Rebekah Ross conducted hearings in February 2014 and April 2014, she issued a decision finding Plaintiff not disabled. *Id*. at 167-89. As the Appeals Council denied Plaintiff's request for review, Plaintiff appealed the final decision to this Court. *Id*. at 445-50. This Court reversed ALJ Ross's decision, finding the ALJ failed to assess Plaintiff's RFC in accordance with the level of weight the ALJ gave Dr. Moore's opinion and failed to provide any reason for rejecting lay witness testimony. *Id*. at 224-35. On remand, ALJ Rebecca Jones conducted hearings in April 2018, and in September 2018, after which she issued a decision finding Plaintiff not disabled. *Id*. at 275-317. The parties stipulated to remand ALJ Jones' decision, and this Court, in turn, remanded for the ALJ to reevaluate the medical opinion evidence, including the opinion of Dr. Moore and the November 2014 opinion of Dr. Wingate; and reevaluate credibility, RFC, and step five findings as needed. *Id*. at 318-20.

In turn, new hearings were held before ALJ David Johnson in September 2021 and December 2022. AR. at 78-132. The ALJ then issued a partially favorable decision finding Plaintiff not disabled prior to December 16, 2020, and disabled beginning on that date. *Id*. at 23. Using the five-step disability evaluation process,[1] the ALJ found, in pertinent part, Plaintiff had the severe impairments of affective disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), and obstructive sleep apnea. *Id.* at 8. The ALJ found that, prior to the date Plaintiff became disabled, she could perform work at light levels with postural and environmental limitations, further limited to simple, routine tasks, with quota-based pace, no more than simple

---

[1] 20 C.F.R. §§ 404.1520, 416.920

ORDER - 2

work-related decisions, no interaction with the public, occasional, superficial interaction with coworkers, and simple, occasional workplace changes. *Id.* at 12.

As the Appeals Council declined to assume jurisdiction, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

ORDER - 3

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Opinions

Plaintiff contends the ALJ erred by discounting the opinions of treating medical provider Dr. Abegg, examining medical providers Dr. Mayers, Dr. Moore, Dr. Wingate, and Dr. Redman, and other objective medical evidence. (Dkt. # 16 at 3-20.) The Commissioner argues the ALJ reasonably rejected the opinions as inconsistent with the record during the relevant period. (Dkt. # 22 at 3-22.)

Because Plaintiff applied for benefits before March 27, 2017, prior regulations apply to the ALJ's evaluation of medical opinion evidence. Under the applicable regulations, where not contradicted by another doctor, a treating doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

#### 1. Sharon Abegg, M.D.

In January 2011, Dr. Abegg completed an "Attending Physician Statement – Disability Claim Form," which indicated it was "unclear" when Plaintiff might be able to return to work because she was disabled by her recurrent depression. AR at 1367. Dr. Abegg highlighted that her work stress contributed to her depression. *Id.* Shortly after, in February 2011, Dr. Abegg completed a "Report of Industrial Injury or Occupational Disease," noting Plaintiff's depression and PTSD caused her to miss work. *Id.* at 1408. Dr. Abegg indicated she experienced flashbacks, nightmares, and heightened depression because of workplace stress. *Id.*

Two years later, in January 2013, Dr. Abegg provided supplemental information for the Washington Department of Social and Health Services ("DSHS"), noting that Plaintiff could not "work due to severe depression, panic and hypersomnia." AR at 1644. Dr. Abegg reported she was unable to accept supervision, work independently, work limited hours, or work with any type of population. *Id.* She was unable to arrive at work on time and lacked the ability to learn simple tasks and stay on task in a work environment. *Id.* at 1645. She was "very compliant" with treatment but it was "very difficult" for her to leave her house because of her severe depression and anxiety. *Id.* Dr. Abegg indicated her impairments would permanently prevent her from working at any level. *Id.*

The following year, in January 2014, Dr. Abegg completed a "Mental Impairment Questionnaire" where she indicated that, although Plaintiff's depression improved, she was unable to cope with work stress and was too disabled for work. AR at 1466-73. Dr. Abegg noted that, since becoming her treating physician, Dr. Abegg saw her every one to three months. *Id.* at 1466. Dr. Abegg described clinical findings such as "depressed mood, anxiety, [and] stress intolerance," which supported her severe impairments. *Id.* Dr. Abegg assessed she had serious limitations with her ability to maintain attention, attendance, and punctuality; and could not meet competitive standards working in proximity to others or completing a normal workday without interruptions from psychologically based symptoms. *Id.* In sum, Dr. Abegg explained Plaintiff was unable to deal with normal work stress and that her impairments would require her to take several unscheduled breaks a day and miss more than four days a month. *Id.* at 1466, 1472.

Four years later, in April 2018, Dr. Abegg completed a "Medical Source Statement," which assessed that Plaintiff was moderately limited in her ability to carry out activities of daily living; markedly limited in her ability to maintain social functioning, concentration, persistence,

ORDER - 5

or pace; and markedly limited by episodes of decompensation. AR at 1916-19. Notably, rather than assessing Plaintiff's need to rest during a normal workday or how frequently she would require unscheduled breaks, Dr. Abegg reported these were not applicable because she was too disabled to work at all. As before, Dr. Abegg found she had serious limitations with her ability to maintain attention, attendance, and punctuality; could not meet competitive standards working in proximity to others or completing a normal workday without interruptions from psychologically based symptoms; and – if employed – she would permanently miss four or more days of work a month. *Id.*

        2.       *Kathleen Mayers, Ph.D.*

In March 2011, Dr. Mayers examined Plaintiff and indicated she was not able to "maintain attention and concentration through a normal eight-hour workday," and dealt with her "intense depression with excessive sleeping." AR at 1414. Dr. Mayers discussed the background information she reviewed, including medical records and emergency room records, and reviewed Plaintiff's medical history, past and present drug and alcohol use, social and family history, daily routine, and work history. *Id.* at 1409-14. As to Plaintiff's limitations, Dr. Mayers wrote that Plaintiff's manner "was very slowed, and she displayed indications of psychomotor retardation." *Id.* at 1411. She experienced "periods of very serious depression" as well as anxiety and panic attacks. *Id.* Her global assessment of functioning ("GAF") score was 50. *Id.* at 1413. Moreover, although Dr. Mayers reported generally benign mental status exam findings, she wrote Plaintiff's "ability to adapt to a work-like setting is decreased by her major depressive disorder and also possibly by anxiety." *Id.* at 1413.

In March 2012, Dr. Mayers examined Plaintiff again, opining that despite some normal mental status findings, "she probably could not maintain attention and concentration through a

ORDER - 6

normal eight-hour workday with her current slowed and sedated manner." AR at 1431. Dr. Mayers noted Plaintiff's "appearance was somewhat disheveled. She displayed very slowed responses. She was talking about driving, and her responses were so slowed that I had concerns about safety issues for her and others around her while she is driving." *Id.* at 1428. Further, Dr. Mayers wrote that Plaintiff "displayed flat affect and a quality that seemed almost 'numb' and very slowed." *Id.* Her GAF score was 52. *Id.* at 1431. Concerning deterioration, Dr. Mayers reported Plaintiff's "ability to adapt to a work-like setting is decreased by her current very slowed pace and probable sedation from her current medication and her depressed mood." *Id.* at 1430.

### 3. Lawrence Moore, Ph.D.

In November 2012, Dr. Moore evaluated Plaintiff and completed a "Psychological/Psychiatric Evaluation" opining Plaintiff was stable on her medications; but moderately impaired in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR at 1582-86. Specifically, Dr. Moore reported that Plaintiff's current medication appeared to help control her psychiatric symptoms and her GAF score was 65. *Id.* at 1583-84. In preparing the evaluation, Dr. Moore indicated he reviewed "an inpatient psychiatry discharge instruction sheet from Providence St. Peter Hospital dated 1/14/2011." *Id.* at 1582.

### 4. Terilee Wingate, Ph.D.

In November 2014, Dr. Wingate offered a DSHS Psychological Evaluation, which opined that Plaintiff had mild to moderate limitations in her ability to perform work-related mental activities. AR at 1673-77. In preparing the evaluation, Dr. Wingate reviewed Plaintiff's

Psychiatric Hospitalization records from 2011 and Dr. Moore's DSHS Psychological Evaluation. *Id.* at 1673. Dr. Wingate reported "depression and anxiety" were Plaintiff's primary impairments and her GAF score was 50. *Id.* at 1673, 1675. Dr. Wingate indicated moderate limitations as to her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; complete a normal work day and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting. *Id.* at 1675-76.

In August 2016, Dr. Wingate provided another DSHS Psychological Evaluation. AR at 1925-33. Dr. Wingate indicated she reviewed her November 2014 evaluation before completing this opinion. *Id.* Dr. Wingate reported Plaintiff had trouble concentrating, woke up several times a night, had anxiety when she left the house, "had a delusional episode likely due to medications," and showed signs of memory impairment. *Id.* at 1926. Dr. Wingate opined several changes from the November 2014 assessment. In pertinent part, she had marked – instead of moderate – limitations with her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. *Id.* at 1927.

In June 2018, Dr. Wingate provided another DSHS Psychological Evaluation concerning Plaintiff's limitations. AR at 2684-88. Dr. Wingate indicated she reviewed "SW notes" and her prior evaluation before completing the evaluation. *Id.* at 2684. Dr. Wingate noted Plaintiff's primary impairments were bipolar disorder, anxiety, and depression; she had ongoing back pain; she had sleep apnea and used a bi-pap machine; and she had been in therapy since 2016. *Id.* Concerning clinical findings, Dr. Wingate wrote that Plaintiff's anxiety and mood "greatly

ORDER - 8

impacts her concentration and ability to complete tasks," and "she had a delusional episode that she felt was due to her medications." *Id.* at 2685. As to Plaintiff's limitations with basic work activities, in pertinent part, Dr. Wingate opined the same restrictions as the August 2016 opinion. *Id.* at 2686.

                5.     *Richard Redman, M.D.*

In July 2014, Dr. Redman completed a Sleep Disorders Residual Functional Capacity Questionnaire assessing Plaintiff's sleep impairments. AR at 1656-57. Dr. Redman indicated Plaintiff exhibited recurring attacks of daytime sleepiness, which typically occurred twice a day. *Id.* at 1656. In addition, Dr. Redman reported Plaintiff experienced occasional – defined in the form as "6% to 33% of an eight-hour working day" – symptoms that interfered "with the attention and concentration needed to perform even simple work tasks." *Id.* at 1657. Dr. Redman indicated these impairments could be expected to last at least twelve months, and Plaintiff's symptoms and chronic fatigue would likely require her to take three unscheduled ten-minute breaks during an average workday. *Id.* Finally, Dr. Redman opined Plaintiff would miss "about five days a month" because of her impairments. *Id.*

                6.     *Inconsistencies with the Record*

The ALJ gave Dr. Abegg's opinions "little weight" because they were "inconsistent with the longitudinal medical evidence" and her normal exam findings. AR at 44-45. Similarly, the ALJ discounted Dr. Mayers opinion's because they were "largely based on [Plaintiff's] self-reported symptoms, which were not fully consistent with the medical evidence and other evidence of record," including the "many findings on exam with Dr. Abegg that [Plaintiff's] cognition is within normal limits." *Id.* at 42. The ALJ gave "some weight" to Dr. Moore's November 2012 opinion, but explained Plaintiff's normal exam findings, control of psychiatric

ORDER - 9

symptoms with medication, and GAF score of 65 limited the degree of functional limitations he accepted. *Id.* at 45-47. The ALJ further explained he discounted Dr. Moore's opined limitations with Plaintiff's issues performing activities within a schedule, as well as attending work and being punctual, because these were based on Plaintiff's testimony rather than objective evidence. *Id.* at 46. Likewise, the ALJ gave Dr. Wingate's November 2014 opinion "some weight" because it was consistent with the record, but "little weight" to her August 2016 and June 2018 opinions. *Id.* at 47. The ALJ found Dr. Wingate's August 2016 opinion relied "largely on [Plaintiff's] self-reports and is inconsistent with the longitudinal record showing largely normal mental status examinations." *Id.* The ALJ discounted Dr. Wingate's June 2018 opinion because it was "not consistent with the overall record that shows many normal mental status exams." *Id.* at 49. Finally, the ALJ dismissed Dr. Redman's opinion because it was inconsistent with the record. *Id.* at 51.

The ALJ found Plaintiff showed "improvement with medication management; routinely normal mental status examinations; and significant periods of stability from a mental health standpoint." AR at 44; *see also id.* at 42 ("Dr. Abegg observed no problems with attention and concentration"), 49 ("she is largely stable for long periods with treatment"), 51 ("denied sleep disturbance" and felt "well rested during the day"). The cited records, which consistently report sleep issues (*id.* at 1659-61, 1738-42, 1824-39, 2095-2101, 2775, 2787, 2797, 2802, 2831, 2841, 2853, 2854, 2893, 2913, 2991, 3008, 3050, 3061, 3068, 3077-80); depression, PTSD, anxiety (*id.* at 1494-96, 1826, 1835, 1839, 1848, 1851, 2071, 2075, 2111, 2777-82, 2790, 2797, 2815, 2841, 2856, 2861, 2866, 2882, 2935, 2968, 2986, 2991, 3005-08, 3018-23, 2062-89); decompensatory episodes (*id.* at 1471, 1848, 2787, 2993-99); and suicidal ideations (*id.* at 2981-83, 3085-89); do not provide substantial evidence for the ALJ's findings, and in fact contradict it. An ALJ may not

reject evidence based on an inaccurate portrayal of the record. *Reddick v. Chater,* 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision unsupported by substantial evidence where "paraphrasing of record material is not entirely accurate regarding the content or tone of the record."). It is true that the ALJ cited some notes reflecting normal mood and energy findings (*id*. at 1832, 1855, 1858, 1864, 1868, 2031, 2083, 2095, 2106, 2116), but such observations must be "read in context of the overall diagnostic picture" the provider draws. *Ghanim*, 763 F.3d at 1162. The fact that a person has "occasional symptom-free periods" is not inconsistent with finding that the person is too disabled to function in the workplace. *Lester*, 81 F.3d at 833.

The ALJ's assessment that Plaintiff's issues with concentration and memory were because she used "alcohol and marijuana in combination with her prescribed medications during that period" (AR at 42) repeats the same mistakes. Treatment notes consistently show Plaintiff's treating providers were not concerned with her medication compliance or occasional alcohol and marijuana intake and did not consider her overly sedated. *Id.* at 2777-83, 2928, 3077-79. Furthermore, the ALJ misunderstood Dr. Mayers' findings as to Plaintiff's alcohol use. Dr. Mayers wrote Plaintiff's "medications (and alcohol use) need to be reviewed because she seemed sedated at the time of the exam," and "she appears to be overly sedated. Her use of alcohol is a concern." *Id.* at 1431. Under "Past and Present Drug and Alcohol Use" Dr. Mayers noted Plaintiff "last used marijuana a couple of days ago… [and] drinks about once a week at present." *Id.* at 1426. Concerning Plaintiff's "Mood and Affect," however, Dr. Mayers reported Plaintiff "displayed flat affect and a quality that seemed almost 'numb' and very slowed… [she] has not been crying lately, and feels numb related to a medication change . . . [s]he is experiencing intense anxiety." *Id.* at 1428. As to Plaintiff's issues with deterioration, Dr. Mayers explained her ability to adapt in a work setting was "decreased by her current very slowed pace and probable

ORDER - 11

sedation from her current medication and her depressed mood." *Id.* at 1430. In sum, although Dr. Mayers discussed Plaintiff's alcohol use with some concern she did not raise Plaintiff's marijuana use as an issue, and explicitly linked Plaintiff's deterioration with her medication and depression without referencing alcohol use.

Likewise, in contrast to the ALJ's finding that Plaintiff was "able to live independently" and manage her treatment alone (AR at 47), the record indicates that, at times, she lived with her boyfriend (*id.* at 2973), her mom (*id.* at 3079), or her adult son. *Id.* at 2973. Her son frequently visited (*id.* at 2802, 2841, 2948, 2968) and took her to medical appointments (*id.* at 2979), and treatment providers noted her family's commitment to keeping her engaged with her treatment plan. *Id.* at 2927. The ALJ's findings are thus not supported by substantial evidence.

An ALJ may rely on a plaintiff's GAF scores "as a method of quantifying treatment physicians' qualitative assessments of her overall functioning," but may not rely on it "as an isolated measure of [a plaintiff's] ability to perform work." *See Craig v. Colvin,* 659 F.App'x 381, 382 (9th Cir. 2016); s*ee also Garrison v. Colvin,* 759 F.3d 995, 1003 n.4 (2014) (GAF scores do not describe functional limitations). The ALJ explained "in her January 21, 2014, opinion, Dr. Abegg assessed Plaintiff's GAF score as 55," which "was consistent with only moderate limits." AR at 44. Similarly, the ALJ articulated that, in November 2012, Dr. Moore gave Plaintiff a GAF score of 65, which "provides a basis for finding that the [plaintiff] is limited in these areas, but not to a very significant degree." *Id.* at 46. Notably, given their relation in time, the ALJ did not discuss Dr. Mayers' March 2011 evaluation of Plaintiff's GAF as 50 (*id.* at 1413), or March 2012 score as 52. *Id.* at 1431. However, the ALJ did cite Dr. Wingate's August 2016 GAF score assessment of 50, explaining that although this score indicates serious impairments, "it reflects issues beyond those relevant to the disability evaluation." *Id.* at 48. The

ORDER - 12

ALJ clearly erred because he relied on Plaintiff's GAF scores as evidence of her functional limitations. Moreover, as Dr. Abegg's later opinion was based on the complete evaluation of the combined impact of *all* of Plaintiff's impairments, the ALJ should have given it more weight. *See Sprague v. Bowen,* 812 F.2d 1226, 1229-30 (9th Cir. 1987).

An ALJ may reject a medical opinion that is contradicted by objective evidence in the medical record. *Ford v. Saul,* 950 F.3d 1141, 1156 (9th Cir. 2020). In this case, however, Plaintiff's treating provider addressed why normal mental status examination findings did not contradict opinions of severe limitations. As Dr. Abegg explained, although Plaintiff's medications stabilized her, she could not "withstand the stress of a job" because "the stress of a daily job [would] overwhelm [her] Bipolar [and] PTSD conditions." AR at 1865, 1871. Dr. Abegg explained that even when Plaintiff is doing well, she "cannot handle the stress of work." *Id.* at 2079, 2092. In fact, as the ALJ references (*id.* at 44), Dr. Abegg was remarkably consistent in noting this in her treatment notes during the relevant period. *See id.* at 1825 (May 2014, "do not feel [Plaintiff] could sustain a job"), 1828 (June 2014, "doubt very much she could tolerate the stress of work"), 1865 (January 2016, "don't think she could withstand the stress of a job"), 1871 (April 2016, "the stress of a daily job will overwhelm her . . . she is permanently disabled by just her psychiatric issues"), 2079 (December 2016, "despite low [symptom] level now, Pt cannot tolerate work stressors"), 2092 (April 2017, despite stable mood she "cannot handle the stress of work"), 3261 (October 2019, she was stable and maintaining but "would be unable to handle the stress of day to day work"). Dr. Mayers (*id.* at 1413, 1430) and Dr. Moore (*id.* at 1582-86) addressed this in the same way, indicating Plaintiff's psychiatric impairments caused her severe limitations concentrating and adapting in work settings – despite some normal findings and stability with medication.

ORDER - 13

The ALJ did not address these doctors' explanations. It is insufficient for an ALJ to simply disagree with a doctor. *See Reddick,* 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). In this case, the ALJ failed to explain why the doctors' interpretation of the medical record was incorrect.

The ALJ did not offer specific, clear, and convincing reasons for rejecting the medical opinions provided by Plaintiff's treating provider, Dr. Abegg, and examining physicians, Dr. Moore, Dr. Mayers, Dr. Wingate, and Dr. Redman. In fact, the reasons given by the ALJ – Plaintiff's doctors overly relied on her self-reports, she had minimal limitations, her mental status exam findings were consistently normal – are plainly belied by the record and rest upon mischaracterizations of the doctors' opinions. Because the ALJ provided no valid reason supported by substantial evidence to discount the doctors' opinions, the Court concludes the ALJ erred by discounting them.

**B.    Scope of Remand**

Plaintiff argues the Court should remand for an award of benefits because the record is complete and the improperly discounted opinions support a finding of disability. (Dkt. # 16 at 34; *see also* dkt. # 26 at 18.) The Commissioner contends normal mental exam findings during the relevant period, Plaintiff's activities and treatment history, and the opinions of various examining and non-examining medical providers create conflicts in the record that must be addressed by the ALJ. (Dkt. # 22 at 30.)

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be

ORDER - 14

remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Notably, even when "all conditions of the credit-as-true rule are satisfied, [if] an evaluation of the record as a whole creates serious doubt that a [plaintiff] is, in fact, disabled . . . [the Court has the] flexibility to remand for further proceedings." *Id.*

In this case, Plaintiff unquestionably satisfies all three conditions of the credit-as-true rule. First, as explained throughout this order, the ALJ failed to provide legally sufficient reasons to reject the opinions of Plaintiff's treating and examining medical sources. We need not repeat this analysis here. Second, there is no need to develop the record or convene further administrative proceedings. The ALJ failed to follow the appropriate methodology for weighing a treating physician's medical opinion, and there is no legitimate reason provided for rejecting Dr. Abegg's opinions. As such, the ALJ erred by giving Dr. Abegg's opinions "little weight" and instead should have found them to be controlling. The Vocational Expert ("VE") testified that, based on the ALJ's RFC assessment, a person with Plaintiff's limitations would not be able to sustain competitive employment if the person were "anything more than 10% off task" or had "more than two unexcused absences a month." AR at 93. Because Dr. Abegg's opinions outlined

physical limitations which prevent Plaintiff from doing any full-time work, she is entitled to benefits. *Trevizo v. Berryhill,* 871 F.3d 664, 677 (9th Cir. 2017).

Although the Commissioner argues further proceedings would serve the purpose of allowing the ALJ to revisit the medical opinions and testimony that he rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule preclude the argument that a remand for the purposes of allowing the ALJ to have a second – or in this case fourth – chance qualifies as a remand for "useful purpose" under the first part of credit-as-true analysis. *See Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart,* 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show [Plaintiff] is not credible any more than [Plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility." (citation omitted)).

Moreover, the ALJ gave significant weight to non-examining State agency psychological consultants' opinions that Plaintiff could work full time with interaction and adaptation limitations. AR at 41-42. These opinions conflict with Dr. Abegg's opinion that Plaintiff's mental impairments were disabling and she was unable to work without significant accommodations. *Id.* at 1917-19. Regulations and case law applicable to Plaintiff's application require treating physicians' opinion be given greater weight than non-examining doctors' opinions. *Garrison*, 759 F.3d at 1012 ("[T]he opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician."). As treating physician, Dr.

ORDER - 16

Abegg's opinions are entitled to greater weight than the non-examining State agency psychologists' opinions. Accordingly, no material conflict remains to be resolved.

Third, if the improperly discredited evidence were credited as true, it is clear that the ALJ would be required to find Plaintiff disabled on remand. The Court's conclusion follows directly from the analysis of the ALJ's errors and the strength of the improperly discredited evidence, credited as true: a treating provider and four examining providers all deemed Plaintiff to be disabled because of an array of severe physical and mental impairments, and a VE explicitly testified that a person with the impairments described by Plaintiff's medical caretakers could not work. Accordingly, Plaintiff satisfies the requirements of the credit-as-true standard.

As such, we now turn to the question whether the Court should nonetheless exercise "flexibility" and remand for further proceedings. In this case, the answer is clearly no. The Commissioner simply repeats all of the arguments that have already been made, asserting that the evidence provided by the providers who treated and examined Plaintiff should not be given much weight and that Plaintiff's testimony should not be accepted. As before, the Commissioner dwells on a handful of records showing slight improvements in Plaintiff's condition. At no point does the Commissioner advance an argument that the ALJ overlooked anything in the record and explain how that evidence undercuts Plaintiff's claim to be disabled. There is nothing in the record that would create doubt as to Plaintiff's entitlement to the benefits she seeks. The record reflects that, since the alleged onset date, Plaintiff has been afflicted with a number of severe impairments, including pain, issues sleeping, PTSD, and anxiety. Even if these symptoms have occasionally improved for brief periods of time – while Plaintiff is in treatment and reducing environmental stressors – the Court, like her numerous medical providers, sees no reason to

doubt that she has been entirely incapable of work since January 2011. There is thus no basis for serious doubt that Plaintiff is disabled.

Because the medical opinion evidence provided by the treating and examining providers establishes disability, the Court need not address whether the ALJ erred in discounting symptom testimony. Plaintiff satisfies all three conditions of the credit-as-true rule and a careful review of the record discloses no reasons to seriously doubt that she is, in fact, disabled. Remand for a calculation and award of benefits is therefore required under our credit-as-true precedent.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for an award of benefits under sentence four of 42 U.S.C. § 405(g).

Dated this 5th day of March, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge